IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JASON TODD PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 112-059 |
| | ) | |
| DENNIS BROWN, Warden, Augusta | ) | |
| State Medical Prison, et al.,[1] | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, filed the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The claims in Plaintiff's complaint concern his allegations that prison officials improperly allowed several inmates to gain access to Plaintiff's cell, where they beat and stabbed Plaintiff, resulting in injuries that required the use of a wheelchair. (See doc. no. 1.) Although Plaintiff has returned his Prisoner Trust Fund Account Statement and Consent to Collection of Fees form, he has not yet paid an initial fee as required, and thus the Court has not yet screened Plaintiff's complaint pursuant to the IFP statute to determine which, if any, claims are viable and whether Defendants should be served with a copy of the complaint. See 28 U.S.C. § 1915A. The matter is presently before the Court on Plaintiff's "Motion for Injunction," (doc. no. 3), which was filed at the same time as

---

[1] Dennis Brown has identified himself as the Defendant Warden of Augusta State Medical Prison. (Doc. no. 5, p. 1.) The **CLERK** is **DIRECTED** to modify the docket accordingly.

his complaint.

The Court requested a response from Defendant Brown, the Warden at ASMP, which he has provided. (Doc. no. 5.) Specifically, Defendant Brown filed a Special Appearance Response to address Plaintiff's allegations, and he includes the sworn affidavit of Dr. Billy Nichols, the Medical Director at ASMP. (Id. at 1-2 & Ex. 1 (hereinafter "Nichols Aff.").) Despite the fact that Plaintiff's complaint has not yet been screened, the Court finds it appropriate to rule on his motion for preliminary injunctive relief without further delay. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion for a preliminary injunction be **DENIED** .

I.  **BACKGROUND**

In the instant motion, Plaintiff asserts that he is currently being housed in a nursing unit at ASMP because he is "in a wheelchair and unable to walk." (Doc. no. 3, p. 1.) However, he asserts that Defendants are threatening to remove his wheelchair and place him "in population knowing he is unable to walk." (Id. at 2.) Plaintiff seeks an injunction that he not be moved from the nursing unit, that his wheelchair not be taken away, and that "any other threats [] made by Defendants [not] be fulfilled." (Id.)

In his response to the motion, Defendant Brown argues that Plaintiff's requests for injunctive relief should be denied because Plaintiff "has received an abundance of care to assist him with progressive ambulation." (Doc. no. 5.) In this regard, Dr. Nichols avers that Plaintiff was allegedly assaulted at ASMP on December 26, 2011, resulting in trauma to his face, abdomen, and pelvis. (Nichols Aff. ¶ 7.) He further avers that on that same date, Plaintiff complained of medical problems relating to the alleged assault, and he was transported to Georgia Health Sciences University, where he received a CAT scan of his head and chest, an

2

MRI of his thoracic and lumbar spine, and a neurosurgery evaluation. (Id. ¶¶ 8-10.) According to Dr. Nichols, the results of these tests were negative aside from the MRI, which revealed degenerative disc disease showing no acute abnormalities; the results further indicated that Plaintiff's "symptoms were good and that he would be able to make a full recovery quickly." (Id.) In addition, Dr. Nichols avers that a neurological motor examination of all the major muscle groups in Plaintiff's body revealed that Plaintiff had a perfect score of 5/5 on his right leg and a score of 4/5 on his left leg, which was "slightly diminished." (Id. ¶ 11.) Plaintiff was returned to ASMP on December 27, 2011, where he was admitted to a nursing unit.[2] (Id. ¶ 12.)

Dr. Nichols further avers that on December 29, 2011, Plaintiff reported being unable to "move his leg at all," although it is unclear which leg Plaintiff was referring to. (See id. ¶ 13.) Dr. Nichols asserts that from December 29, 2011, through January 24, 2012, Plaintiff remained in the nursing unit at ASMP , where he received numerous consultations with a physician, orthopedic doctor, neurosurgeon, and physical therapist. (Id. ¶¶ 14, 18-19.) According to Dr. Nichols, despite Plaintiff's alleged difficulties with his leg, an EMG performed on Plaintiff on January 3, 2012, revealed normal muscle electrical activities in Plaintiff's extremities. (Id. ¶ 18.) Moreover, Dr. Nichols reports that while in the nursing unit, Plaintiff was "independent in his daily activities" and "was able to transfer himself from [a] bed to [a] chair and from a chair to a toilet." (Id. ¶ 15.)

Furthermore, Dr. Nichols explains that through a course of physical therapy in the

---

[2]Although Dr. Nichols' affidavit indicates that Plaintiff was admitted to the nursing unit in December of 2012, the Court presumes this to be a scrivener's error. (See Nichols Aff. ¶¶ 12-14.)

3

nursing unit, Plaintiff progressed from walking on parallel bars to using a walker, and then walking without support. (Id. ¶¶ 16, 20.) Dr. Nichols avers that he personally witnessed Plaintiff walk 200 feet on his own. (Id. ¶ 20.) He further explains that once Plaintiff could walk 200 feet independently, his wheelchair was removed in accordance with Plaintiff's treatment plan, which is designed to return him to the "long term goal of independent ambulation." (Id. ¶¶ 20-21.) Dr. Nichols also avers that on January 24, 2012, Plaintiff was discharged from the nursing unit and placed in a special accommodation unit at ASMP, a space that does not require walking a distance of more than 200 feet. (Id. ¶¶ 17, 20.) Finally, Dr. Nichols explains that "once it is determined that he is medically able to do so," Plaintiff will be returned to his previous housing assignment. (Id. ¶ 21.) Presumably, Plaintiff's previous housing assignment was in ASMP's general population.

Defendant Brown asserts that Plaintiff's request for injunctive relief amounts to a mere disagreement over the course of his medical treatment, which he asserts is insufficient to state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. (Doc. no. 5, p. 2 (citing Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).)

## II. DISCUSSION

A party moving for injunctive relief must show the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th

4

Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson County, 720 F.2d. 1511, 1519 (11th Cir. 1988)).

Here, Plaintiff has not met his burden of persuasion on all four requisites for obtaining injunctive relief. First, the Court has not yet screened Plaintiff's complaint pursuant to the IFP statute, and thus it is not clear whether Plaintiff has stated a viable claim at this stage of the case, much less that he has suggested a likelihood of success on the merits. Notably, the allegations in Plaintiff's request for injunctive relief relate to his medical care at ASMP and have nothing to do with the allegations in his complaint, which describe an alleged assault that Plaintiff suffered at the hands of other inmates. (Compare doc. no. 1 with doc. no. 3.)

Furthermore, as Defendant Brown correctly asserts (doc. no. 5, p. 2), to the extent Plaintiff intends to raise a claim regarding his medical care at ASMP, he has failed to show a likelihood of success on such a claim. The Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment do not support a claim of deliberate indifference. See Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (*per curiam*); Adams, 61 F.3d at 1546; Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). Plaintiff's disagreement with the medical staff's determination that he no longer requires a wheelchair amounts to a mere difference of opinion regarding his diagnosis or course of treatment. See Adams, 61 F.3d at 1546. As this fails to state a claim under § 1983, Plaintff has therefore failed to show a likelihood of success on this claim.

Moreover, Plaintiff's request that "any other threats" made by Defendants not be

fulfilled is simply a request for a broad instruction to these individuals to obey the law. (Doc. no. 3, p. 2.) However, Fed. R. Civ. P. 65(d) requires requests for injunctions to be *specific* – an injunction which merely orders the defendants to obey the law is too broad and too vague to be enforceable. See Brown v. Alabama Dep't of Transp., 597 F.3d 1160, 1185 (11th Cir. 2010); Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999). As Plaintiff's vague request regarding Defendants' "threats" does not conform to the specificity requirement of Rule 65(d), it is unenforceable and must fail.

Second, Plaintiff has failed to establish that, if the injunction is not granted, there is a substantial threat that he will suffer irreparable injury. In order to establish the irreparable injury requirement, Plaintiff must show that the threat of injury is "neither remote nor speculative, but actual and imminent." Northeastern Fla. Chapter of Ass'n of General Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 973 (2d Cir. 1989)); see also Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (In order to obtain injunctive relief, a plaintiff must show "a real and immediate-- as opposed to a merely conjectural or hypothetical-- threat of *future* injury."). To meet this standard, a plaintiff must show "a *likelihood* that irreparable harm will occur." United States v. Emerson, 270 F.3d 203, 262 (5th Cir. 2001) (quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2948.1 at 153-56). However, the future injury need not be an inevitability, "*a strong threat of irreparable injury* . . . is an adequate basis." Id.

Here, while Plaintiff alleges that Defendants are threatening to return him to general population without a wheelchair despite knowing he is unable to walk (doc. no. 3, p. 2), the Medical Director at ASMP has provided a sworn statement that he personally witnessed

6

Plaintiff walk independently for 200 feet before determining that a wheelchair was no longer medically necessary (Nichols Aff. ¶ 20). Additionally, the record reflects that Plaintiff is currently sufficiently independent in his ability to walk that he can be housed in the prison's accommodation unit rather than the nursing unit and that he will not be moved to his original housing assignment in general population until medical staff have determined that he is medically able to return there. (Id. ¶¶ 17, 20-21.) In light of this evidence, Plaintiff has failed to demonstrate that, if the motion is not granted, there is a real risk of imminent, irreparable injury.

As for the final two elements of the preliminary injunction inquiry, Plaintiff has offered nothing to suggest that any threatened injury to the movant outweighs the damage the proposed injunction may cause the opposing party or that the proposed injunction would not be adverse to the public interest. He has therefore failed to satisfy these elements, especially since federal courts should refrain from unwarranted interference in the day-to-day operations of state prisons. See Prieser v. Rodriguez, 411 U.S. 475, 491-92 (1973). In sum, Plaintiff has not satisfied the requisite elements for a preliminary injunction.

## III. CONCLUSION

For these reasons, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's "Motion for Injunction" be **DENIED**. (Doc. no. 3.)

SO REPORTED and RECOMMENDED this 31st day of May, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

7